01

02

03

04

05 UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF CALIFORNIA

06

07 MAURO V. PEREZ,                          )
                                           )
08       Petitioner,                       )   CASE NO. 2:07-cv-00544-RSL-JLW
                                           )
09   v.                                    )
                                           )
10 D.K. SISTO,                             )   REPORT AND RECOMMENDATION
                                           )   ON MERITS OF PETITION
11       Respondent.                       )
   _____        )

12

13       I.       SUMMARY

14       Petitioner Mauro Perez is currently incarcerated at the California State Prison, Solano

15 in Vacaville, California.  He was convicted by a jury of one count of second degree murder,

16 with a two-year gun enhancement in Los Angeles County Superior Court on July 28, 1989.

17 He is currently serving a sentence of seventeen-years-to-life with the possibility of parole and

18 has filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 challenging his 2005

19 parole denial by the Board of Parole Hearings of the State of California (the "Board").[1]  (*See*

20 Docket 1.)

21 _____

[1] The Board of Parole Hearings replaced the Board of Prison Terms, which was abolished on July 1, 2005.  *See*
22 California Penal Code § 5075(a).

REPORT AND RECOMMENDATION - 1
ON MERITS OF PETITION

01    Respondent initially moved to dismiss the petition on the basis that it was untimely

02 under the one-year statute of limitation set forth in the Anti-Terrorism and Effective Death

03 Penalty Act of 1996 ("AEDPA").  (*See* Dkt. 10.)  This Court denied respondent's motion and

04 directed respondent to file an answer to the petition.  (*See* Dkts. 12 & 13.)  Respondent has

05 now filed an answer together with relevant portions of the state court record.  (*See* Dkt. 15.)

06 Petitioner filed a traverse in reply.  (*See* Dkt. 16.)

07    Petitioner contends the Board's decision to deny him parole violated his Fifth and

08 Fourteenth Amendment due process rights on the ground that there is no evidence to support

09 its decision.  In addition, he challenges the applicability of the so-called "some evidence"

10 standard of review and contends the Board should have engaged in a proportionality or

11 comparative review process in evaluating his suitability for parole.  Finally, he claims the

12 Board "seeks to impose upon him, ex post facto, the greater penalty of life without the

13 possibility of parole under special circumstances in violation of the Fifth, Sixth and

14 Fourteenth Amendments."  (Dkt. 1 at 20-21.)

15    This Court also directed respondent to provide copies of petitioner's three prior parole

16 consideration hearing transcripts in the event that the information contained therein would

17 assist this Court in evaluating petitioner's due process claim.  (*See* Dkt. 19.)  Respondent

18 produced the transcripts as requested, however, he contends this Court is barred from

19 considering these documents because petitioner failed to attach them to his state habeas

20 petition and, thus, they were not part of the state court record.  (S*ee* Dkt. 21.)  Pursuant to

21 Rule 5(c) and Rule 7(a), a federal habeas court may consider transcripts of prior proceedings

22 as well as expand the record to include additional materials relating to the petition.

REPORT AND RECOMMENDATION - 2
ON MERITS OF PETITION

01 Accordingly, I recommend the Court reject respondent's contention and review the hearing

02 transcripts.

03     Briefing is now complete and this matter is ripe for review.  The Court, having

04 thoroughly reviewed the record and briefing of the parties, recommends the Court deny the

05 petition and dismiss this action with prejudice.

06     II.     STANDARD OF REVIEW

07     The Anti-Terrorism and Effective Death Penalty Act of 1996 governs this petition as it

08 was filed after the enactment of AEDPA.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27 (1997).

09 Because petitioner is in custody of the California Department of Corrections pursuant to a

10 state court judgment, 28 U.S.C. § 2254 provides the exclusive vehicle for his habeas petition.

11 *See White v. Lambert*, 370 F.3d 1002, 1009-10 (9th Cir.), *cert. denied*, 543 U.S. 991 (2004)

12 (providing that § 2254 is "the exclusive vehicle for a habeas petition by a state prisoner in

13 custody pursuant to a state court judgment, even when the petitioner is not challenging his

14 underlying state court conviction.").  Under AEDPA, a habeas petition may not be granted

15 with respect to any claim adjudicated on the merits in state court unless petitioner

16 demonstrates that the highest state court decision rejecting his petition was either "contrary to,

17 or involved an unreasonable application of, clearly established Federal law, as determined by

18 the Supreme Court of the United States," or "was based on an unreasonable determination of

19 the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. §

20 2254(d)(1) and (2).

21     As a threshold matter, this Court must ascertain whether relevant federal law was

22 "clearly established" at the time of the state court's decision.  To make this determination, the

01  Court may only consider the holdings, as opposed to dicta, of the United States Supreme

02  Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000).  In this context, Ninth Circuit

03  precedent remains persuasive but not binding authority.  *See Williams*, 529 U.S. at 412-13;

04  *Clark v. Murphy*, 331 F.3d 1062, 1069 (9th Cir. 2003).

05       The Court must then determine whether the state court's decision was "contrary to, or

06  involved an unreasonable application of, clearly established Federal law."  *See Lockyer v.*

07  *Andrade*, 538 U.S. 63, 71 (2003).  "Under the 'contrary to' clause, a federal habeas court may

08  grant the writ if the state court arrives at a conclusion opposite to that reached by [the

09  Supreme] Court on a question of law or if the state court decides a case differently than [the]

10  Court has on a set of materially indistinguishable facts."  *Williams*, 529 U.S. at 412-13.

11  "Under the 'unreasonable application' clause, a federal habeas court may grant the writ if the

12  state court identifies the correct governing legal principle from [the] Court's decisions but

13  unreasonably applies that principle to the facts of the prisoner's case."  *Id.* at 413.  At all

14  times, a federal habeas court must keep in mind that it "may not issue the writ simply because

15  [it] concludes in its independent judgment that the relevant state-court decision applied clearly

16  established federal law erroneously or incorrectly.  Rather that application must also be

17  [objectively] unreasonable."  *Id.* at 411.

18       In each case, the petitioner has the burden of establishing that the state court decision

19  was contrary to, or involved an unreasonable application of, clearly established federal law.

20  *See* 28 U.S.C. § 2254; *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).  To determine

21  whether the petitioner has met this burden, a federal habeas court normally looks to the last

22  reasoned state court decision.  *See Ylst v. Nunnemaker*, 501 U.S. 797, 803-04 (1991); *Medley*

REPORT AND RECOMMENDATION - 4
ON MERITS OF PETITION

01  *v. Runnels*, 506 F.3d 857, 862 (9th Cir. 2007).  Where, as in this case, the state courts issue

02  summary denials without explaining their reasons, *see infra*, this Court must conduct an

03  independent review of the record to determine whether the state courts' decisions were

04  contrary or involved an unreasonable application of Supreme Court holdings.  *See Delgado v.*

05  *Lewis*, 223 F.3d 976, 981-82 (9th Cir. 2000).

06          Finally, AEDPA requires federal courts to give considerable deference to state court

07  decisions, and state courts' factual findings are presumed correct.  *See* 28 U.S.C. § 2254(e)(1).

08  Federal courts are also bound by a state's interpretation of its own laws.  *See Murtishaw v.*

09  *Woodford*, 255 F.3d 926, 964 (9th Cir. 2001) (citing *Powell v. Ducharme,* 998 F.2d 710, 713

10  (9th Cir. 1993)).

11          III.      PRIOR STATE COURT PROCEEDINGS

12          Respondent now states that petitioner has properly exhausted his state court remedies,

13  and timely filed the instant petition with regard to what he claims "amounts to one" ground

14  for relief – that there is no evidence to support the Board's 2005 decision to deny parole.  (*See*

15  Dkt. 15 at 9.)  As discussed *infra*, the petition clearly challenges the Board's decision on both

16  due process and ex post facto grounds.  (*See* Dkt. 1.)  Petitioner also challenges the

17  applicability of the so-called "some evidence" standard of review, and contends the Board

18  should have engaged in a proportionality or comparative review process in evaluating his

19  suitability for parole.  Except for petitioner's due process claim, respondent fails to address

20  any of the aforementioned, despite the requirement of Rule 5(b) of the Rules Governing

21  Section 2254 Cases in the United States District Courts.  (*See* Dkt. 15 at 9.)  Because this

22  appears to be an oversight and both parties have already experienced substantial delays in this

REPORT AND RECOMMENDATION - 5
ON MERITS OF PETITION

01  case, this Court believes it is in the interest of justice to proceed without additional briefing.

02  Accordingly, the Court has independently reviewed the record and determined that petitioner

03  has properly presented all of his issues and contentions to the state's highest court.  (*See id.*,

04  Exhibit F.)  *See* 28 U.S.C.  § 2254(b)(3); *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)

05  ("[s]tate prisoners must give the state courts one full opportunity to resolve any constitutional

06  issues by invoking one complete round of the State's established appellate review process");

07  *see also Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999) (holding that California law

08  requires presentation of claims to the California Supreme Court through petition for

09  discretionary review in order to exhaust state court remedies).  Accordingly, I recommend the

10  Court find that petitioner has properly exhausted all claims raised in his federal habeas corpus

11  petition.

12        Once it has been determined that a petitioner's claims have been exhausted, this Court

13  typically looks to the state court's orders upholding the Board's decision to determine whether

14  they meet the deferential AEDPA standard.  *See Ylst*, 501 U.S. at 803-04.  In this case, the

15  only state court presented with the habeas corpus petition and, thus, the only state court to

16  review it was the California State Supreme Court.  (*See* Dkt. 1 at 7 & Dkt. 15 at 8 and 10.)

17  The California Supreme Court denied the petition without comment.  (*See* Dkt. 15, Exh. F.)

18  As discussed *supra*, when a state court issues a decision on the merits but does not provide a

19  reasoned decision, we review the record independently to determine whether that decision

20  was objectively reasonable.  *See Delgado*, 223 F.3d at 982.  Accordingly, this Court must

21  conduct an independent review of all of petitioner's claims.  Although our review of the

22

01 record is conducted independently, we continue to show deference to the state court's ultimate

02 decision. *See Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002).

03        IV.    BACKGROUND

04        The Board's 2005 report relied entirely upon the 1989 Probation Officer's Report in

05 summarizing the facts of the crime as follows:

> On June 30, 1988, at about 9:20 p.m., in front of a bar, Victor's
> Club . . . at 3231 North Main Street, the defendant walked up to
> the victim whom he had had a losing fist fight with about three
> weeks prior and shot him [once] in the chest with a nine
> millimeter handgun after engaging in a brief conversation with
> the victim, who was standing at a traffic sign. One of the four
> eyewitnesses to the incident temporarily detained the victim –
> [sic] the defendant, but released him when the victim fell to the
> ground. The defendant left hurriedly in his car and fired
> additional shots into the air. A witness jotted down his car's
> license plate number and the police were called. The defendant
> was arrested the next day, but denied shooting the victim
> although he admitted being beaten up by the victim. Witnesses
> later positively identified the defendant as the person who shot
> the victim.

14 (Dkt. 15, Exh. C at 10.) During the 2005 parole hearing, petitioner agreed with the above

15 facts, with one exception -- he maintains that the victim was standing outside of the bar, not at

16 a traffic signal. (*See id*. at 10-11.)

17        Petitioner was tried by a jury and convicted of second degree murder with a firearm

18 enhancement on July 28, 1989, in Los Angeles County Superior Court. (*See id*, Exh. A.) He

19 began serving his sentence of seventeen-years-to-life with the possibility of parole on August

20 10, 1989. (*See id.*, Exh. C at 1.) His minimum eligible parole date was set for November 2,

21 1999. (*See id*.) Petitioner has now been incarcerated for approximately twenty years for this

22 offense.

REPORT AND RECOMMENDATION - 7
ON MERITS OF PETITION

01        The parole denial which is the subject of this petition followed a parole hearing held

02   on May 11, 2005.  This was petitioner's fourth application, including his initial parole

03   consideration hearing.  (*See* Dkt. 1 at 5.)  His previous applications were also denied.  After

04   denial of his 2005 application, petitioner filed a habeas corpus petition in the California

05   Supreme Court.  As discussed, *supra*, that petition was unsuccessful.  This federal habeas

06   petition followed.  Petitioner contends the 2005 denial by the Board violated his federal

07   constitutional rights.  Thus, the habeas petition before this Court does not attack the propriety

08   of his conviction or sentence.

09        V.        FEDERAL HABEAS CHALLENGES TO STATE PAROLE DENIALS

10        A.        *Due Process Right to be Released on Parole*

11        Under the Fifth and Fourteenth Amendments to the United States Constitution, the

12   government is prohibited from depriving an inmate of life, liberty or property without the due

13   process of law.  U.S. Const. amends. V, XIV.  A prisoner's due process claim must be

14   analyzed in two steps: the first asks whether the state has interfered with a constitutionally

15   protected liberty or property interest of the prisoner, and the second asks whether the

16   procedures accompanying that interference were constitutionally sufficient.  *Ky. Dep't of*

17   *Corrs. v. Thompson*, 490 U.S. 454, 460 (1989); *Sass v. Cal. Bd. of Prison Terms*, 461 F.3d

18   1123, 1127 (9th Cir. 2006).

19        Accordingly, our first inquiry is whether petitioner has a constitutionally protected

20   liberty interest in parole.  The Supreme Court articulated the governing rule in this area in

21   *Greenholtz v. Inmates of Neb. Penal,* 442 U.S. 1 (1979), and *Board of Pardons v. Allen,* 482

22   U.S. 369 (1987).  *See McQuillion v. Duncan*, 306 F.3d 895, 902 (9th Cir. 2002) (applying

REPORT AND RECOMMENDATION - 8
ON MERITS OF PETITION

01   "the 'clearly established' framework of *Greenholtz* and *Allen*" to California's parole scheme).

02   The Court in *Greenholtz* determined that although there is no constitutional right to be

03   conditionally released on parole, if a state's statutory scheme employs mandatory language

04   that creates a presumption that parole release will be granted if certain designated findings are

05   made, the statute gives rise to a constitutional liberty interest.  *See Greenholtz*, 442 U.S. at 7,

06   12; *Allen*, 482 U.S. at 377-78.

07       As discussed *infra*, California statutes and regulations afford a prisoner serving an

08   indeterminate life sentence an expectation of parole unless, in the judgment of the parole

09   authority, he "will pose an unreasonable risk of danger to society if released from prison."

10   Title 15 Cal. Code Regs., § 2402(a).  The Ninth Circuit has therefore held that "California's

11   parole scheme gives rise to a cognizable liberty interest in release on parole."  *McQuillion*,

12   306 F.3d at 902.  To similar effect, *Irons v. Carey*, 505 F.3d 846, 850 (9th Cir. 2007) held

13   that California Penal Code § 3041 vests all "prisoners whose sentences provide for the

14   possibility of parole with a constitutionally protected liberty interest in the receipt of a parole

15   release date, a liberty interest that is protected by the procedural safeguards of the Due

16   Process Clause."  This "liberty interest is created, not upon the grant of a parole date, but

17   upon the incarceration of the inmate." *Biggs v. Terhune*, 334 F.3d 910, 915 (2003).  *See also*

18   *Sass*, 461 F.3d at 1127.

19       Because the Board's denial of parole interfered with petitioner's constitutionally-

20   protected liberty interest, this Court must proceed to the second step in the procedural due

21   process analysis and determine whether the procedures accompanying that interference were

22   constitutionally sufficient.  "[T]he Supreme Court [has] clearly established that a parole

REPORT AND RECOMMENDATION - 9
ON MERITS OF PETITION

01  board's decision deprives a prisoner of due process with respect to this interest if the board's

02  decision is not supported by 'some evidence in the record.'" *Irons*, 505 F.3d at 851 (citing

03  *Superintendent v. Hill*, 472 U.S. 445, 457 (1985) (holding the "some evidence" standard

04  applies in prison disciplinary proceedings)).  The "some evidence" standard requires this

05  Court to determine "whether there is any evidence in the record that could support the

06  conclusion reached by the disciplinary board." *Hill*, 472 U.S. at 455-56.  Although *Hill*

07  involved the accumulation of good time credits rather than release on parole, later cases have

08  held that the same constitutional principles apply in the parole context because both situations

09  directly affect the duration of the prison term.  *See e.g., Jancsek v. Or. Bd. of Parole*, 833 F.2d

10  1389, 1390 (9th Cir. 1987) (adopting the "some evidence" standard set forth by the Supreme

11  Court in *Hill* in the parole context); *accord*, *Sass*, 461 F.3d at 1128-29); *Biggs*, 334 F.3d at

12  915; *McQuillion*, 306 F.3d at 904.

13      "The fundamental fairness guaranteed by the Due Process Clause does not require

14  courts to set aside decisions of prison administrators that have some basis in fact," however.

15  *Hill*, 472 U.S. at 456.  Similarly, the "some evidence" standard is not an invitation to examine

16  the entire record, independently assess witnesses' credibility, or re-weigh the evidence.  *Id.* at

17  455.  Instead, it is there to ensure that an inmate's loss of parole was not arbitrarily imposed.

18  *See id.* at 454.  The Court in *Hill* added an exclamation point to the limited scope of federal

19  habeas review when it upheld the finding of the prison administrators despite the Court's

20  characterization of the supporting evidence as "meager."  *See id.* at 457.

21  //

22  //

REPORT AND RECOMMENDATION - 10
ON MERITS OF PETITION

01          B.      *California's Statutory and Regulatory Scheme*

02          In order to determine whether "some evidence" supported the Board's decision with

03   respect to petitioner, this Court must consider the California statutes and regulations that

04   govern the Board's decision-making.  *See Biggs*, 334 F.3d at 915.  Under California law, the

05   Board is authorized to set release dates and grant parole for inmates with indeterminate

06   sentences.  *See* Cal. Penal Code § 3040 and 5075, *et seq*.  Section 3041(a) requires the Board

07   to meet with each inmate one year before the expiration of his minimum sentence and

08   normally set a release date in a manner that will provide uniform terms for offenses of similar

09   gravity and magnitude with respect to their threat to the public, as well as comply with

10   applicable sentencing rules.  Subsection (b) of this section requires that the Board set a release

11   date "unless it determines that the gravity of current convicted offense or offenses, or the

12   timing and gravity of current or past convicted offense or offenses, is such that consideration

13   of the public safety requires a more lengthy period of incarceration."  *Id.*, § 3041(b).  Pursuant

14   to the mandate of § 3041(a), the Board must "establish criteria for the setting of parole release

15   dates" which take into account the number of victims of the offense as well as other factors in

16   mitigation or aggravation of the crime.  The Board has therefore promulgated regulations

17   setting forth the guidelines it must follow when determining parole suitability.  *See* 15 CCR

18   § 2402, *et seq*.

19          Accordingly, the Board is guided by the following regulations in making a

20   determination whether a prisoner is suitable for parole:

21                  (a) General. The panel shall first determine whether the life
                    prisoner is suitable for release on parole. Regardless of the
22                  length of time served, a life prisoner shall be found unsuitable

REPORT AND RECOMMENDATION - 11
ON MERITS OF PETITION

01   for and denied parole if in the judgment of the panel the
02   prisoner will pose an unreasonable risk of danger to society if
     released from prison.

03   (b) Information Considered. All relevant, reliable information
     available to the panel shall be considered in determining
04   suitability for parole. Such information shall include the
     circumstances of the prisoner's social history; past and present
05   mental state; past criminal history, including involvement in
     other criminal misconduct which is reliably documented; the
06   base and other commitment offenses, including behavior before,
     during and after the crime; past and present attitude toward the
07   crime; any conditions of treatment or control, including the use
     of special conditions under which the prisoner may safely be
08   released to the community; and any other information which
     bears on the prisoner's suitability for release. Circumstances
09   which taken alone may not firmly establish unsuitability for
     parole may contribute to a pattern which results in a finding of
10   unsuitability.

11   15 CCR § 2402(a) and (b).  Subsections (c) and (d) also set forth suitability and unsuitability

12   factors to further assist the Board in analyzing whether an inmate should be granted parole,

13   although "the importance attached to any circumstance or combination of circumstances in a

14   particular case is left to the judgment of the panel." 15 CCR § 2402(c).

15          In examining its own statutory and regulatory framework, the California Supreme

16   Court in *In re Lawrence* recently held that the proper inquiry for a reviewing court is

17   "whether some evidence supports the *decision* of the Board … that the inmate constitutes a

18   current threat to public safety, and not merely whether some evidence confirms the existence

19   of certain factual findings."  *In re Lawrence*, 44 Cal.4th 1181, 1212 (2008).  The court also

20   asserted that the Board's decision must demonstrate "an individualized consideration of the

21   specified criteria, but "[i]t is not the existence or nonexistence of suitability or unsuitability

22   factors that forms the crux of the parole decision; the significant circumstance is how those

01 factors interrelate to support a conclusion of current dangerousness to the public." *Id*. at

02 1204-05, 1212.  As long as the evidence underlying the Board's decision has "some indicia of

03 reliability," parole has not been arbitrarily denied.  *See Jancsek*, 833 F.2d at 1390.  As the

04 California courts have continually noted, the Board's discretion in parole release matters is

05 very broad.  *See Lawrence*, 44 Cal.4th at 1204.  Thus, the penal code, corresponding

06 regulations, and California law clearly establish that the fundamental consideration in parole

07 decisions is public safety and an assessment of a prisoner's current dangerousness.  *See id.*, at

08 1205-06.

09       C.     *Summary of Governing Principles*

10       By virtue of California law, petitioner has a constitutional liberty interest in release on

11 parole.  The parole authorities may decline to set a parole date only upon a finding that

12 petitioner's release would present an unreasonable present risk of danger to society if he is

13 released from prison.  Where the parole authorities deny release, based upon an adverse

14 finding on that issue, the role of a federal habeas court is narrowly limited.  It must deny relief

15 if there is "some evidence" in the record to support the parole authority's finding of present

16 dangerousness.  The penal code, corresponding regulations, and California law clearly support

17 the foregoing interpretation.

18       VI.    PARTIES' CONTENTIONS

19       As discussed in Section III, *supra*, petitioner challenges the Board's 2005 decision to

20 deny parole on both due process and ex post facto grounds.  (*See* Dkt. 1.)  Petitioner's first

21 contention alleges that the Board's decision violated his state and federal constitutional due

22

REPORT AND RECOMMENDATION - 13
ON MERITS OF PETITION

01 process rights because there is no evidence to support its decision.[2]   Specifically, he contends

02 the Board improperly relied upon immutable factors, failed to support its finding regarding his

03 lack of self-help programming, and did not engage in a proportionality or comparative review

04 process in evaluating his suitability for parole.  (*See id*. 1 at 6-8.)  Petitioner also claims the

05 Board "seeks to impose upon him, ex post facto, the greater penalty of life without the

06 possibility of parole under special circumstances in violation of the Fifth, Sixth and

07 Fourteenth Amendments."  (*Id.* at 20-21.)  Finally, petitioner challenges the applicability of

08 the so-called "some evidence" standard of review.  Because this Court has determined that the

09 "some evidence" standard of review is the appropriate standard in the parole context (Section

10 V, *supra*), I recommend the Court reject petitioner's contention that the preponderance of the

11 evidence standard is applicable in this case.  (*See id.* 1 at 9-11.)

12      Respondent claims petitioner does not have a constitutionally protected liberty interest

13 in being released on parole, that the "some evidence" standard is inapplicable in this context,

14 and that even if he does have a protected liberty interest, the Board adequately predicated its

15 denial of parole on "some evidence."  (*See* Dkt. 15 at 4-11.)  Accordingly, respondent argues

16 that petitioner's constitutional rights were not violated by the Board's 2005 decision and that

17 the state court's decision was not contrary to or an unreasonable application of United States

18 Supreme Court law, nor was it an unreasonable determination of the facts.   (*See id.* at 10.)

19

20

_____

21 [2] We do not reach petitioner's claims that his state due process rights under the California Constitution were
violated, as state claims are not cognizable in a federal habeas petition.  *See Estelle v. McGuire*, 502 U.S. 62, 67-

22 68 (1991) (asserting that "it is not the province of a federal habeas court to reexamine state-court determinations
on state-law questions").

REPORT AND RECOMMENDATION - 14
ON MERITS OF PETITION

01 VIII.   ANALYSIS OF RECORD IN THIS CASE

02 A.   *Due Process Violation*

03      The Board based its decision that petitioner was unsuitable for parole primarily upon

04 his commitment offense, as well as upon his escalating pattern of criminal activity, unstable

05 social history, failure to profit from society's previous attempts to correct his criminality,

06 insufficient participation in self-help programming, and only recent gains with regard to

07 acceptance of responsibility for the crime.  (*See id.*, Exh. C at 63-67.)  The Board's findings

08 track the applicable unsuitability and suitability factors listed in Section 2402(b), (c) and (d)

09 of Chapter 15 of the California Code of Regulations.  After considering all reliable evidence

10 in the record, the Board denied petitioner a parole release date and reset his parole suitability

11 hearing for the following year.  (*See id.* at 66-68.)

12      In considering unsuitability factors, the Board typically relies heavily on the

13 circumstances of the commitment offense to support the finding that that the crime was

14 carried out in "an especially heinous, atrocious or cruel manner."  *See* 15 CCR § 2402 (c)(1).

15 In this case, the only factor cited by the Board in support of the commitment offense was that

16 the motive was trivial.  (*See id.* at 64.)  *See* 15 CCR § 2402(c)(1)(E).  As discussed *supra*, the

17 commitment offense involved petitioner, in a drug-and-alcohol-induced state, seeing the

18 victim in front of a bar and shooting him once in the chest.  Petitioner claims he was beaten

19 up by the victim and the victim's friends several weeks earlier after receiving a taste of

20 cocaine from the victim and failing to pay him for the sample.  He feared the victim, who

21 petitioner thought was carrying some type of weapon that night.  After being briefly detained

22 by several eye-witnesses, petitioner fled the scene.  While it is debatable whether the motive

REPORT AND RECOMMENDATION - 15
ON MERITS OF PETITION

01  for the crime in this case was "inexplicable," there is "some evidence" to support the Board's

02  finding that it was "very trivial in relation to the offense."

03        The second unsuitability factor relied upon was petitioner's escalating pattern of

04  criminal misconduct.  (*See* Dkt. 15, Exh. C at 64-65.)  Petitioner's criminal history shows an

05  increasing pattern of criminal conduct, culminating in the second degree murder offense.  His

06  other crimes, while often related to his alcoholism, include possession of a firearm, burglary

07  (multiple offenses), driving under the influence (multiple offenses), trespassing, disturbing the

08  peace, and an immigration violation.  (*See* Dkt. 1, Exh. B at 1 & Exh. C at 2-3.)  The

09  applicable guidelines direct the Board to consider all relevant and reliable information, which

10  includes a prisoner's involvement in any criminal conduct which is reliably documented.  *See*

11  15 CCR § 2402(b).  Thus, the Board properly considered petitioner's criminal history in

12  support of its decision and correctly found an escalating pattern of criminal activity.

13        The third unsuitability factor relied upon by the Board was petitioner's unstable social

14  history.  (*See* Dkt. 15, Exh. C at 65.)  An "unstable social history" is defined as a "history of

15  unstable or tumultuous relationships with others."  *See* 15 CCR § 2402(c)(3).  The Board cited

16  petitioner's "alcohol and cocaine abuse and his criminal behavior" to support this factor.

17  (Dkt. 15, Exh. C at 65.)  Petitioner's prior criminal behavior was the basis of the Board's

18  finding of "escalating criminal activity," and provides nothing additional to support a finding

19  of "unstable social history."  Thus, petitioner's alcohol and cocaine abuse, without more, do

20  not support the Board's finding that petitioner had a history of unstable or tumultuous

21  relationships.  In fact, prior to and during his incarceration, petitioner appears to have

22

REPORT AND RECOMMENDATION - 16
ON MERITS OF PETITION

01   maintained exceptionally close familial relations.  Accordingly, there is no evidence to

02   support the Board's finding with regard to this factor.

03        The fourth factor cited by the Board was petitioner's failure to profit from society's

04   previous attempts to correct his criminality, such as time spent in county jail and prior grants

05   of probation.  (*See id.*, Exh. C at 65.)  Petitioner's criminal record supports this finding.

06        The fifth and sixth factors cited by the Board were petitioner's insufficient

07   participation in self-help programming and institutional behavior.  (*See id.*)  Specifically, the

08   Board stated that petitioner "programmed well while he's been in the institution, but has not

09   yet sufficiently participated in beneficial self-help programming.  He's only had one serious

10   115 disciplinary, and that was back in 1991, and that was for fighting."  (*Id.*)  In explaining its

11   finding, the Board praised petitioner, stating:

12             We want to commend you, though.  You've been doing a good
              job in programming.  You've been disciplinary free since 1991.
13             You've been participating in AA and NA and I want to note
              again for the record that Mr. Perez got his GED back in 1995.
14             However, currently, the positive aspects of his behavior do not
              outweigh the factors of unsuitability.  What we recommend to
15             you, Mr. Perez, is that you continue your good programming,
              add self-help wherever you can.  If you can't get into programs
16             in the institution, you can certainly do work on your own and in
              your cell.  And continue to remain disciplinary free.

17

18   (Dkt. 15, Exh. C at 66.)  As is evident from the above excerpts, the Board simultaneously

19   compliments petitioner's self-help programming while stating that he needs to continue to do

20   more.  It is clear from the record that petitioner has had only one disciplinary infraction,

21   which occurred eighteen years ago, and that his institutional behavior is not at issue.  What is

22   unclear, however, is what type of additional programming is necessary.  In reviewing

REPORT AND RECOMMENDATION - 17
ON MERITS OF PETITION

01  petitioner's 2005 psychosocial evaluation, Dr. Taylor states that petitioner completed the

02  following self-help courses:

03              a Discipleship Seminar (1991), a Stress Management Class
                (2004), Anger Management, Crime Prevention, is a Men's
04              Violence Prevention Program sponsor, and completed Men's
                Violence Prevention Program a second time as of 6-04.  He
05              attends the Discipleship class every Wednesday and attends
                church every Sunday.  On the weekends, he is involved in
06              counseling at the church.

07  (Dkt. 1, Exh. B at 1-2.)  In addition, the same report notes that petitioner has regularly

08  attended Alcoholics Anonymous for years, and continues to do so, and that he "has upgraded

09  himself educationally, vocationally, and personally and seems to make good use of self-help

10  groups."  (*Id.* at 2-3).  Accordingly, the evidence in the record does not support the Board's

11  finding that petitioner's additional self-help programming or that his institutional behavior

12  prior to the 2005 hearing provided an independent basis for a finding of unsuitability.  It was

13  appropriate for the Board, however, to encourage petitioner to continue and expand his

14  positive institutional record for the duration of his incarceration.

15          The final factor cited by the Board is that petitioner has changed his description of the

16  facts surrounding the criminal offense over the years and, thus, has only recently accepted

17  responsibility for the crime.  Concluding that petitioner's progress was recent, the Board

18  explained:

19               In the 1998 transcript of your hearing, you made some
                statements about what happened during the commitment
20              offense.  You said that the ---You added a guy to the scenario.
                You said that there was a guy that you owed money to for about
21              three months who had a tire iron and that the victim, quote,
                "came at you with a knife."  You also said that people had
22              reported hearing you fire shots as you drove away, but that

REPORT AND RECOMMENDATION - 18
ON MERITS OF PETITION

01          those were actually shots being fired at you.  And then in your
            2001 and your 2004 hearing, you said that someone grabbed
02          your arm and somehow the gun went off.  Now today you said
            pretty much the same thing that you said in the probation
03          officer's report, which was that you saw him coming towards
            you, you thought he might have something in his hand and that
04          you shot the gun.  So I just wanted you to be aware of that,
            because I think probably at your original Initial Hearing, the
05          Commissioner probably told you that it was important to be
            honest because when you make misstatements, they can come
06          back and be a problem for you.  So I just want you to know that
            those are there so that you can be prepared to answer that again,
07          because I know that those will probably be raised again.

08    (*Id.* at 67.)  Although petitioner did not claim self-defense during the 2005 hearing and his

09    recent psychosocial report indicates he accepts responsibility for his actions and is remorseful

10    (dkt. 1, exh. C at 3), the three prior parole consideration hearing transcripts support the

11    Board's finding that his story has varied over the years.  (See Dkt. 21.)  Petitioner's claim that

12    his age (69) and consequent memory loss might be at fault is not convincing, after reviewing

13    the three prior parole consideration hearing transcripts.  Because petitioner's description of

14    the facts surrounding the offense have varied, there is "some evidence" to support the Board's

15    conclusion that petitioner's progress is recent and that he needs additional time to accept

16    responsibility for the crime.

17          In summary, therefore, the record contains "some evidence" to support four of the six

18    reasons the Board gave for finding him unsuitable for parole.  As stated above, it is beyond

19    the authority of a federal habeas court to determine whether evidence of suitability outweighs

20    the circumstances of the commitment offense, together with any other reliable evidence of

21    unsuitability for parole.  The Board has broad discretion to determine how suitability and

22    unsuitability factors interrelate to support its conclusion of current dangerousness to the

REPORT AND RECOMMENDATION - 19
ON MERITS OF PETITION

01   public.  *See Lawrence*, 44 Cal.4th at 1212.  In this case, the Board acknowledged petitioner's

02   progress, but concluded that he needed additional time to demonstrate his suitability for

03   parole.  The Board's findings are therefore supported by "some evidence" in the record.

04          Petitioner's contention that the Board should have engaged in a proportionality or

05   comparative review process in evaluating his suitability for parole also lacks merit.  There is

06   no such federal constitutional requirement and, in interpreting the statutory requirements at

07   issue in this case, the California State Supreme Court has held that the Board must conduct an

08   individualized inquiry.  *See Lawrence*, 44 Cal.4th at 1221 (citing *In re Dannenberg*, 34

09   Cal.4th 1061, 1083-1084 (2005)).  Thus, whether his "commitment offense is more or less

10   egregious than other, similar crimes" is inapposite under the relevant statutory framework.  *Id.*

11          B.      *Ex Post Facto Violation*

12          Petitioner claims the Board "seeks to impose upon him, *ex post facto*, the greater

13   penalty of life without the possibility of parole under special circumstances in violation of the

14   Fifth, Sixth and Fourteenth Amendments."  (Dkt. 1 at 20-21.)  Petitioner's claim fails for

15   several reasons.  First, Article I of the United States Constitution provides that neither

16   Congress nor any state shall pass an ex post facto law.  U.S. Const. Art. I, § 9, cl. 3, Art. I,

17   §10, cl. 1.  Hence, the Ex Post Facto Clause, by definition, applies to the Legislative Branch,

18   not to the courts or an administrative body, such as the Board.  *See Rogers v. Tennessee,* 532

19   U.S. 451, 460 (2001) (holding "[t]he Ex Post Facto Clause, by its own terms, does not apply

20   to courts"); *Marks v. United States,* 430 U.S. 188, 191 (1977) (holding "t]he Ex Post  Facto

21   Clause is a limitation upon the powers of the Legislature, and does not of its own force apply

22   to the Judicial Branch of government") (citations omitted)); *Lagrand v. Stewart,* 133 F.3d

01 1253, 1260 (9th Cir. 1998) (holding "[t]he Ex Post Facto Clause does not apply to court

02 decisions construing statutes.")

03       Moreover, the Board has not increased petitioner's punishment.  The Ex Post Facto

04 Clause prohibits the retrospective application of criminal statutes that change the definition of

05 a crime or enhance the punishment for a criminal offense.  *See Collins v. Youngblood*, 497

06 U.S. 37, 41 (1990) ("Although the Latin phrase 'ex post facto' literally encompasses any law

07 passed 'after the fact,' it has long been recognized . . . that the constitutional prohibition on ex

08 post facto laws applies only to penal statutes which disadvantage the offender affected by

09 them.")  Petitioner was sentenced to a term of seventeen-years-to-life.  While petitioner might

10 have hoped or expected to be released sooner, the Board's decision to deny him a parole

11 release date has not enhanced his punishment or sentence.

12       Petitioner cites the United States Supreme Court's decision in *Cunningham v.*

13 *California,* 549 U.S. 270 (2007), in support of his contention that the Board has enhanced his

14 sentence in violation of his Sixth and Fourteenth Amendment rights.  The Court in

15 *Cunningham* held that because California's determinate sentencing law allows a judge, not a

16 jury, to find facts permitting a higher level sentence than that found by the jury, it violates the

17 defendant's right to trial by jury, as guaranteed by the Sixth and Fourteenth Amendments.

18 *See id.* at 279-294.  As discussed above, the Board's decision denying petitioner a parole

19 release date does not alter his fifteen-years-to-life sentence and, therefore, does not implicate

20 *Cunningham*.

21       Accordingly, the Board's decision denying petitioner a parole release date did not

22 violate the Ex Post Facto Clause and petitioner's claim should be denied.

REPORT AND RECOMMENDATION - 21
ON MERITS OF PETITION

01          IX.     CONCLUSION

02          Given the totality of the Board's findings, there is "some evidence" in the record that

03   petitioner's release date as of the Board's 2005 decision would have posed an unreasonable

04   risk to public safety.  The California Supreme Court's Order upholding the Board's decision

05   was therefore not contrary to, or an unreasonable application of, clearly established federal

06   law, or based on an unreasonable determination of facts.  Because the Board and the state

07   courts' ultimate decisions were supported by "some evidence," there is no need to reach

08   respondent's argument that another standard applies.  Accordingly, I recommend the Court

09   find the petitioner's constitutional rights were not violated, that the petition be denied and that

10   this action be dismissed with prejudice.

11          This Report and Recommendation on Merits of Petition is submitted to the United

12   States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).

13   Within twenty days after being served with this Report and Recommendation on Merits of

14   Petition, any party may file written objections with this Court and serve a copy on all parties.

15   Such a document should be captioned "Objections to Magistrate Judge's Report and

16   Recommendation on Merits of Petition."  Failure to file objections within the specified time

17   may waive the right to appeal the District Court's Order.  *See Martinez v. Ylst*, 951 F.2d 1153

18   (9th Cir. 1991).  A proposed order accompanies this Report and Recommendation on Merits

19   of Petition.

20          DATED this 9th day of September, 2009.

21

22          _____
             JOHN L. WEINBERG
             United States Magistrate Judge

REPORT AND RECOMMENDATION - 22
ON MERITS OF PETITION